We'll hear Allen v. Credit Suisse. Good morning. May it please the Court, my name is Regina Markey and I represent plan beneficiaries, participants, and trustees of ERISA benefit and pension plans. The bank defendants here argue that finding them to be ERISA fiduciaries in the four foreign currency schemes that are alleged would, quote, transform nearly every ERISA plan counterparty or vendor into an ERISA fiduciary, close quote. But this Court should recognize that defendants misread the law. All that the appellants here request is that the Court apply the statutory standard in ERISA for a fiduciary and it's long- Why are they a fiduciary? What do you plead that makes them fiduciaries? We plead that they exercise authority and control over plan assets, which meets the definition of 321A1 in ERISA. All we ask this Court to find is- How do they exercise authority and control over plan assets? By doing what? For instance, in the benchmarking scheme, which is the first scheme, they managed to transfer plan assets to themselves through manipulating the benchmark exchange rates for foreign currency exchanges with the plans. The defendants argue that they did not set the price for those exchanges in their brief. May I ask you, basically, the plans hired them to affect currency transfers, right? That is correct, Judge Raji. And your complaint is that they exercised their transfer discretion in a way that resulted in them profiting? That is correct. Okay. And you say that was fraudulent? We say that it was done without disclosure to the plans, Your Honor. Well, I'm still not sure I understand how they had a fiduciary obligation to the plan. You may have a fraud claim or you may have some other contract-based claim, but I'm not sure how they had- what their fiduciary obligation to you was. Your Honor, as long as the banks exercised authority and control over assets and through their manipulation of the benchmarks, they managed to deceive the plans and transfer plan assets to themselves by controlling their own compensation, they are exercising control over plan assets. No ERISA plan fiduciary or their investment manager approved of the banks manipulating the benchmarks. The plans were unaware that the benchmarks were going to be manipulated when they placed their foreign the order and agreed to pay whatever exchange rate prevails. The banks then had the ability and exercised the ability to alter those rates in their own favor, and that as a result, they were custodians of the plan assets that had been confided to them and made money off it. Your Honor, we don't argue that in the benchmarking scheme that the plans acted as custodians per se. You can have custody of plan assets and not have fiduciary control. So we argue that they had control over the plan assets. By setting or missetting the exchange rate. By manipulating the exchange rates in their favor. Yes, Your Honor. I'm sorry. And if I went to the bank in order to get Deutschmark so I can go to Germany and they did the same thing, would they be my fiduciaries? Those would not be plan assets unless you were an ERISA plan, Your Honor. They wouldn't be a fiduciary. They would know a fiduciary duty to me. As an individual, Your Honor? Yes. I'm not aware of what the fiduciary duty— Surely that's because the nature of the transaction is one in which I anticipate that the bank or any company or person I deal with is going to maximize their own benefit. Your Honor, if the banks negotiated an actual rate with the plans, said, okay, the euros and dollars were going to be exchanged at this rate, that would not be a fiduciary act. But if the banks— That's the—your argument is the control they had is they could jimmy it around. Exactly, Your Honor. Am I right that these transactions, these currency transactions, were supposed to be executed according to instructions that were given by the plan's investment managers? That's correct, Your Honor. Now, we don't have those agreements in the record, right? That's correct, Your Honor. But to the extent the transactions were supposed to be conducted according to the discretion conferred on the banks that would make them fiduciaries in the exercise of that discretion— Your Honor, the discretion is—first of all, you don't have to have discretion over plan assets. You just have to have control or authority, just to clarify. But to answer your— Control or authority suggests you're going to be able to make decisions about the assets, right? The courts—some courts make a distinction between control and discretion. But to answer your question, we believe that the bank's ability to transfer plan assets to themselves by secretly manipulating the benchmarks, they exercised control and authority over those plans. What I'm not understanding is, are you suggesting to us that if a plan's managers decide to put money in a bank account, the bank then has a fiduciary responsibility? Not at all, Judge Rosha. Okay. I didn't think so. So that's where I'm trying to figure out, given that these transactions were pursuant to instructions, there wasn't discretion to do what they wanted with them, I would have thought that they either violated obligations of good faith that went with that contractual relationship or further engaged in fraud, but not a breach of a fiduciary duty. What am I missing? Your Honor, ERISA preempts contract claims when they involve plan assets generally. But only if you've got a fiduciary relationship. That's exactly correct, Your Honor. So I'm still having problems with where the fiduciary relationship arises. It arises because the banks exercised authority and control. They were able to transfer plan assets to themselves. And under ERISA, that level of control constitutes fiduciary status. I see my time is just about up, Your Honor. Let me ask you, if a plan, it's a hypothetical, if a plan engages, hires somebody to purchase an asset and the instructions are, purchase the asset, go to Goldman Sachs and buy X quantity of this asset at Goldman Sachs' offered price. Yes, Your Honor. Does that person have fiduciary responsibility? They do not if they follow the instructions. All right, so the hypothetical is supposing, yeah, well, so I was going to say, supposing that that person, that entity, arranges with Goldman Sachs to increase its offered price because for reasons it would be advantageous to the person who was so entrusted to have this transaction take place at a higher price. That person then becomes a fiduciary by exercising the opportunity to influence the offered price? I would have to look at the exact fact pattern to answer fully. But generally, if you look at United Teamsters' plan v. Magnicare, that fact pattern seems similar to Your Honor's hypothetical. And in that case, the vendor did become a planned fiduciary. How come they're not being sued for fraud? Or is that a different case? Your Honor, I'm an ERISA fiduciary, ERISA attorney, so I can't really explain. But I would note that governments in the U.S., on the state and federal level, and globally, did investigate these practices and fined the banks over $10 billion for them. So the banks have not been pursued exclusively under ERISA for their practices. The applicable regulations say that currency transactions between broker-dealers and plans do not ordinarily create a fiduciary relationship. That's Section 2510.3 through 21? Yes, Your Honor. That's cited. And you don't really respond to that. I'm not sure I understand why you think that's not applicable here. Well, first of all, currency is not a security. So that would not apply. And I want to make clear that the courts and the Department of Labor make a distinction between what they call ministerial duties and fiduciary duties. And it's kind of like a continuum. But what happened here is the only reason it's not a ministerial duty is that you say they engaged in a fraud. Otherwise, if I understand you, they would have just, you know, executed the currency transaction, right? Just because this fact pattern in this case might fit a fraud analysis does not mean that it does not meet an ERISA analysis. But I'm suggesting to you that if I understand your argument, it is the fraud that creates the fiduciary relationship. Otherwise, there wouldn't be one. They would have been then conducting ministerial tasks. It's the failure to disclose that they were manipulating the rates. And that failure to... Their failure to disclose fraud. In our decision in Geller v. Countryline, we did not think that fraudulent conduct was sufficient to make someone a fiduciary. So again, I'm trying to understand how your case comes within any recognition of a fiduciary. Your Honor, if you look at the test in U.S. v. Glick, which is, did the monies that the entity handled, were they plan assets? And did the banks have authority or control over those assets? And, Your Honor, we believe the ability to transfer that money meets the definition under ERISA of a fiduciary. Okay. We'll hear you on rebuttal. May it please the Court. I'm David Januszewski from Cahill, Gordon and Rindell. I represent the Credit Suisse defendants. Mr. Schwartz from Sullivan and Cromwell represents Barclays, and he will argue for two minutes. Credit Suisse is one of the so-called Group 1 defendants or non-settling defendants in the decisions, and Mr. Schwartz represents the other defendants. Your Honor, Judge Schofield properly dismissed the plaintiff's ERISA claims on the grounds that they plead no plausible basis for finding the defendant banks to be a fiduciary. Counsel was asked what the basis was to allege fiduciary duty, and she read the statute. The complaint parrots the provisions of ERISA, the definition of ERISA, fiduciary, but alleges no facts to support that the banks were in fact— She's saying, if I understand it correctly, that although they were not intended or expected to be exercising control over planned assets, they did exercise control secretly because when they were given an instruction, a non-discretionary instruction to exercise transactions at a rate that they had no influence over, they secretly went and did things that would affect that rate in a manner beneficial to themselves and failed to disclose it. And in doing so, they were exercising control over planned assets even though they had not been expected to have control over planned assets and were not knowingly entrusted with control over planned assets. Is that a fair statement of the claim being made? I think that's what the allegation is, but it's important to talk about what this relationship is, but what the banks were doing because they cite the ERISA provision and then they joked service provider cases, cases where people are holding funds, depositing funds in their own accounts, commingling assets, writing checks on behalf of the funds. That's not what happened here. That's not what is alleged here. The banks are dealers. They are not brokers. They are not investment advisors. This is Judge Jacob's point. If you individually wanted to go change currency, you're going to go to London and need some pounds, you go up to the desk at the JFK and you give them some dollars and they give you some pounds. That's what's happening here. So if the Caterpillar Fund, Miss Allen participates in, gets some dividends from a London company and they need to change them to dollars, they go to the street. They may come to Credit Suisse. They say, how much will you give me? What's the fault line? In other words, what's the test? Is it that you cannot be a fiduciary if you are dealing arm's length for your own interest? I think for sure that is correct. If it's an arm's length transaction. Then how did your adversary's client know that you were dealing for your own interest on the particular basis in which you did so by manipulating the currency as opposed to charging some recognized percentage fee? Well, again, Your Honor, we're taking the allegations of the misconduct as true as we have through the 12b6 context. There may be other remedies. There is an antitrust case before Judge Schofield in which these plans- But is that the test? If there are other remedies? I mean, if a risk of fiduciary just steals money and spends it on a sports car, that person has violated many different laws. Correct, Your Honor. But the status of being a fiduciary is a gating issue. The Supreme Court has said that. The issue isn't- What issue? It's a threshold issue, a gating issue. If they're not a fiduciary, then ERISA doesn't apply. And the Supreme Court said, and this court has recognized, it's not whether the defendant committed some kind of misconduct that had an impact on the plan. You're assuming the result. In other words, you're just saying, by apodixis, we are not fiduciaries and therefore we can't violate a fiduciary duty. The question is, what is the test for when a third party with which a fund, an ERISA fund is dealing, takes on fiduciary responsibility? Well, Your Honor, there has to be control of the assets. And respectfully, I don't think those allegations make out a case that these banks have control. We're talking about failure to disclose and other misconduct, but- Control of the assets, if you exercise the power, in secret, if you exercise the power to determine the price at which transactions in those assets will be conducted, why isn't that exercise of control? Because it's an arm's length transaction, Your Honor, where, let's say, if we go to the desk to change currency, let's say I go buy a cup of coffee. If the vendor commits some kind of misconduct and I get overcharged or there's some other impropriety, that doesn't mean he has control of my money that I'm paying. Let's assume an extreme example, just to see about making the point. You're entrusted with this money in order to change it, to exchange one currency for another, right? If the assumption were, if we assume for a hypothetical, that you all knew that if you exchanged it today, the plaintiffs would benefit to a certain extent, but if you exchanged it tomorrow, you would benefit to a certain extent to their detriment, your view is that that is perfectly acceptable and that you can delay carrying out your contract obligations to them in order to benefit yourself. Well, that's not what's alleged. I don't believe in the complaint, but I do think that... Were you a fiduciary in those circumstances? Have you been entrusted with the money in order to exchange it without regard to benefiting yourself over the plaintiff? I don't think we're entrusted with the money in the sense of this court's cases applying to service providers, for example. Again, and there is a line that has to be drawn and where I think the line is drawn is where the funds are deposited in the defendant's account, commingled, again, check writing authority, people running off with the funds. That's not how this works. This is, as alleged in the complaint, these transactions are primarily done electronically. So the fund manager would have a screen and they see Barclays is offering this, Credit Suisse is offering this, and the trade gets executed. This is not entrusting us with their funds any more than any other arms like commercial transaction could be said to be entrusting the counterparty. You decide when you're going to press the button that transfers or that exchanges this, their money for a different currency. You have that, you make that decision, right? Correct. Well, in your hypothetical... So in that sense, it's just electronically the equivalent of you having the money in your pocket and going to someone who's got the desired currency and trading it. So for a while, you do have possession or the ability to exercise control over their money, right? In a sense, perhaps in the electronic ether, somehow we have it. But again, that's not what's alleged here. These transactions are executed pursuant to the instructions often given electronically by the investment manager. And that type of hypothetical is not what they are alleging. Well, isn't the issue that the instruction does not limit your timing choice and so you exercise the timing favorable to yourself? It's not a sense of the timing. The transactions that they are alleging are the instructions are execute this at the fix. The allegation isn't that we didn't do that. That's not the allegation. No, what do you... You keep saying what the allegation is. Why don't you tell me what you think the allegation is? It's that the fix... The allegation is that the banks got together to manipulate that fix at the four o'clock fix. It's not that they delayed the transactions. Right, but I'm using that as I said... No, understood. ...to make the point. Understood. Thank you. Thank you. Thank you. Good morning. Matthew Schwartz from Sullivan Cromwell on behalf of what the briefs refer to as the group two defendants. I'd like to just take a few minutes to discuss why the district court was clearly correct in denying the plaintiff's request for yet another 60 days beyond the year plus of litigation they had to search for any contracts that they think they might have found and then plead new claims against the group two defendants for yet a fifth time. First, the district court was clearly within her discretion in recognizing that the complaint had been amended repeatedly and that the plaintiffs had numerous opportunities to locate any such contracts and plead them in the complaint. The plaintiffs clearly can't excuse this pleading failure by saying that they didn't know that this was a potential help to their case. The group one defendants argued very strenuously in their motion to dismiss that the plaintiffs failed to plead a fiduciary relationship. That's obviously the argument we have here today and the plaintiffs obviously could have looked to contracts or thought to plead those in their complaint if they were concerned about that. As an alternate ground, I think based on the argument today, the district court was clearly correct in saying that any attempted amendment would be futile. The plaintiffs are just wrong in contending that the district court said that they needed to plead a contractual relationship in order to establish a fiduciary duty. What the district court actually said was that the plaintiffs hadn't alleged quote, any indicia of control over plan assets or an ongoing contractual relationship between any plan and any defendant in which a defendant unilaterally decided when to enter into FX transactions and at what prices. This ruling was consistent with I think the way the plaintiffs have pled the relationship between the plaintiff plans and the banks in their complaint. The plaintiffs have never actually identified for anyone what the supposed contracts say. Why can't it be said that the banks decided at what prices to enter into transaction with the funds? That is not what the allegations of the complaint are here. What the allegations of the complaint are is that they gave instructions to the bank to execute at certain prices and that those prices were manipulated. It's why there are fraud and antitrust claims in the main action before Judge Schofield that has been settled. So they fixed the price that they would pay, correct? The plans instruct the banks the price to execute at, correct? And the allegation is that the banks manipulated those prices and so somehow took control of plan assets. You say they instructed on the price. You don't mean the price as a number. You mean the price as a concept. In many of the cases, that's correct. Execute at the fix, execute at this particular benchmark. Not the discretion to execute tomorrow, execute a week from now. It's execute at this benchmark. And the gravamont of their allegations are that that benchmark was manipulated. It's no different than if somebody said, okay, gave somebody some money, said, you know, go purchase something and they went and they purchased the exact same thing. But in fact, it wasn't as advertised. That would be a potential fraud claim, but it's not a discretion or a fiduciary duty claim. Thank you. Thank you. We'll hear Rebecca. My opponents seem to emphasize that because there was no commingling of assets, for instance, with assets of the bank, they infer that custody of plan assets is required to find fiduciary duty. And in fact, custody is not required to find control over plan assets. For instance, in Harris Trust in 2002, this court found that an insurer that had custody of plans that refused to roll over free funds at the request of their ERISA client, though they had custody, they did not have control over plan assets. And Mr. Schwartz's argument is that they didn't have control over the assets here either to the extent that they had a contractual obligation to exchange these assets for another currency according to the FX. And they did that. What your grievance is is that they manipulated the FX and you didn't know they were doing that. But insofar as they dealt with the plan assets, they dealt with them as the plan administrators told them to, which is trade them for another currency according to the FX. Why is that not an argument we should be receptive to? Your Honor, we assert that by manipulating the benchmark based on knowledge of the upcoming ERISA plan orders, that is handling a plan asset. And I would emphasize that the district court below did not provide an analysis of whether knowledge of those upcoming orders was itself a plan asset. And that is something that we aver in our complaint and is briefed before you. So that's a different or complementary analysis as to how the banks were handling plan assets. Thank you. Thank you. We reserve decision.